Henry M. VYMETALIK, Appellant,

v.

**FEDERAL BUREAU OF INVESTIGATION.**

No. 84–5649.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 7, 1986.

Decided March 18, 1986.

Henry M. Vymetalik, pro se.

Eileen M. Houghton, Sp. Asst. U.S. Atty., Washington, D.C., a member of the bar of the District of Columbia, pro hac vice, by special leave of court, with whom Joseph E. diGenova, U.S. Atty., and Royce C. Lamberth, R. Craig Lawrence, Michael J. Ryan, and Stuart H. Newberger, Asst. U.S. Attys., Washington, D.C., were on brief, for appellee.

Before WRIGHT, WALD, and SILBERMAN, Circuit Judges.

Opinion for the court filed by Circuit Judge J. SKELLY WRIGHT.

J. SKELLY WRIGHT, Circuit Judge:

This case requires us to determine the scope of the Privacy Act exemption for "investigatory material compiled for law enforcement purposes." The *pro se* appellant, Henry M. Vymetalik, is a United States citizen who immigrated to the United States after World War II from Czechoslovakia. In 1979 he applied for a job with the Federal Bureau of Investigation. When he was not offered the job he filed a Freedom of Information Act request to gain access to his FBI files. After the FBI released 335 pages of documents, appellant submitted an 18-page analysis of the accuracy of the FBI records and sought to have the records amended. Although the FBI claimed that the records were exempt from the amendment provisions of the Privacy Act as law enforcement records, it considered the various amendment requests, made certain minor corrections, and included appellant's comments in his files. It refused to make the majority of the corrections, however, because of the age of the files. Plaintiff then filed this suit in the District Court, seeking to require the FBI to amend its records.

The District Court entered summary judgment in favor of the government. Because we find that the District Court erred in its application of the Privacy Act to the facts of this case, we vacate its grant of summary judgment and remand the case for further proceedings.

## I. BACKGROUND

Appellant, fluent in several eastern European languages, has worked for various government agencies as a translator since he arrived in this country. In 1979 appellant applied for a job with the FBI. Although he was interviewed by FBI officials, he was not offered a job with the agency. *See* Brief and Appendix for Appellee at App. 12 (letter of November 16, 1979). When appellant sought an explanation for the refusal to hire him, *id.* at App. 13 (letter of November 21, 1979), the FBI released a copy of a letter to appellant, which noted that appellant "has had psychiatric treatment and as a result was found unfit for military service in the English Army. * * * On his current application, he answered in the negative concerning the question about having previously applied for employment with the FBI." *Id.* at App. 15. Appellant wrote to the FBI, denying that the statements were true and requesting full disclosure of all of his FBI files under the Freedom of Information Act. *Id.* at App. 16–17 (letter of March 9, 1980).

In response the FBI released 335 pages of documents to appellant.[1] On December 11, 1980 appellant submitted to the FBI a letter, with 13 exhibits, requesting that his records be amended. *Id.* at App. 41. On July 1, 1981 he submitted a complete review of the FBI files and submitted an 18-page document, with 39 exhibits, alleging various inaccuracies in the records.[2] *Id.* at App. 42–54. The FBI refused to amend its files, contending that its Central Records System was exempt from the Privacy Act amendment provisions. *Id.* at App. 55 (letter of August 26, 1981). Although the agency noted that it nonetheless would consider the amendments offered by individuals, it rejected the majority of appellant's suggestions because of the age of many of the files. The agency claimed that the lapse of time since the original investigation made verification of appellant's contentions impossible.[3] After seeking relief within the agency, appellant filed this suit, challenging the FBI's refusal to amend his records.

The FBI records concerning appellant are contained in two files. The first file, No. 123–15086, was created in 1954 when appellant was seeking employment with the United States Information Agency. *Id.* at App. 22 (Second Supplemental Affidavit of Stephen P. Riggen). At that time applicants for government jobs were required to undergo a "loyalty check" by the Civil Service Commission. 22 U.S.C. § 1434 (1952). The FBI performed the investigation at the request of the Civil Service Commission.

The second file, No. 67–632739, was created in 1966 when appellant applied for employment at the FBI as a translator. Brief and Appendix for Appellee at App. 24. The FBI's background investigation, performed pursuant to Executive Order 10450,[4] revealed the results of the 1954 investigation. Because of those records, appellant was not offered the job. The file also contains the results of the third FBI investigation of appellant, performed in 1979 after appellant's second job application to the FBI.

## II. THE PRIVACY ACT

The Privacy Act, 5 U.S.C. § 552a (1982), like the Freedom of Information Act, demonstrates a congressional desire to foster open government and accessibility to government records. The Privacy Act is primarily designed to provide individuals with more control over the gathering, dissemination, and accuracy of information about themselves contained in government files. *See Greentree v. U.S. Customs Service,* 674 F.2d 74, 76 (D.C.Cir.1982) (discussing the purposes and history of the Privacy Act).

The provisions of the Privacy Act generally limit the uses to which government information may be put, *see* 5 U.S.C. § 552a(b), and provide for disclosure of government information to the individual concerned. *See id.* § 552a(d)(1). The Act limits the authority of government agencies to collect information about individuals and requires that government records be

---

1. Although certain material had been excised from some of the documents, appellant has not challenged the omissions.

2. Appellant's amendment requests range from apparent typographical errors, *see* Brief and Appendix for Appellee at App. 43 (noting that date of appellant's marriage was 1946 rather than 1949), to more substantial errors. *See, e.g., id.* at App. 16 (noting that appellant's records erroneously state that appellant had received psychiatric treatment).

3. The agency did, however, include appellant's letters and supporting documents in his files. Thus, any future reader of the files would have the benefit of appellant's contentions. It should be noted that the Privacy Act requires that state-

ments of disagreement be included in agency files when the agency rejects an individual's amendment request. *See* 5 U.S.C. § 552a(d)(4). That requirement, of course, only applies to the extent that the records involved are subject to the provisions of the Privacy Act generally.

4. Executive Order 10450 directs each of the departments and agencies of the federal government to conduct investigations and to ensure that its employees are trustworthy and honest and that their continued employment is consistent with the demands of national security. *See* Executive Order 10450, *reprinted in* Brief and Appendix for Appellee, Addendum.

maintained "with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination[.]" *Id.* § 552a(e) (5). The Act also requires that an agency amend its records upon a showing by the individual concerned that the records are not accurate, relevant, timely, or complete. *See id.* § 552a(d)(2)(B). In addition, the Act provides a private right of action for *de novo* review in the District Court of an agency's refusal to amend its records, *id.* § 552a(g)(1), and provides for criminal penalties for certain knowing violations of the Act. *See id.* § 552a(i).

The Act also provides both general and specific exemptions from the disclosure and amendment provisions. The general exemptions are contained in subsection (j). That subsection provides that the head of an agency may promulgate rules to exempt any system of records from the Act's amendment requirements if the system of records (1) is maintained by the Central Intelligence Agency, or (2) is maintained by an agency which performs as its principal function any activity pertaining to the en-

forcement of criminal laws and which consists of (A) information compiled for the purpose of identifying individual criminal offenders, (B) information compiled for the purpose of a criminal investigation, or (C) reports identifiable to an individual compiled at any stage of the process of enforcement of the criminal laws. *Id.* § 552a(j)(2).[5]

The specific exemptions are contained in subsection (k). That subsection provides that the head of an agency may promulgate rules to exempt any system of records from the Act's amendment procedures if the system of records falls within one of several enumerated categories. Two of the specific exemptions are relevant to this case. The first, subsection (k)(2), provides an exemption for a system of records that contains investigatory material compiled for law enforcement purposes. *Id.* § 552a(k)(2).[6] The second specific exemption that appears relevant to this case is subsection (k)(5). That subsection provides an exemption for systems of records that contain investigatory material compiled solely for the purpose of determining suita-

**5.** Subsection (j) provides in part:

The head of any agency may promulgate rules * * * to exempt any system of records within the agency from any part of this section * * * if the system of records is—
(1) maintained by the Central Intelligence Agency; or
(2) maintained by an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws, including police efforts to prevent, control, or reduce crime or apprehend criminals, and the activities of prosecutors, courts, correctional, probation, pardon, or parole authorities, and which consists of (A) information compiled for the purpose of identifying individual criminal offenders and alleged offenders and consisting only of identifying data and notations of arrests, the nature and disposition of criminal charges, sentencing, confinement, release, and parole and probation status; (B) information compiled for the purpose of a criminal investigation, including reports of informants and investigators, and associated with an identifiable individual; or (c) reports identifiable to an individual compiled at any stage of the process of enforcement of the criminal laws from arrest or indictment through release from supervision.

5 U.S.C. § 552a(j). *See* 28 C.F.R. § 16.96 (1985) (exempting the FBI's Central Records System from the Privacy Act).

**6.** Subsection (k)(2) provides:

The head of any agency may promulgate rules * * * to exempt any system of records within the agency from subsections (c)(3), (d), (e)(1), (e)(4)(G), (H), and (I), and (f) of this section if the system of records is—
 * * * * * *
(2) investigatory material compiled for law enforcement purposes, other than material within the scope of subsection (j)(2) of this section: *Provided, however,* That if any individual is denied any right, privilege, or benefit that he would otherwise be entitled [to] by Federal law, or for which he would otherwise be eligible, as a result of the maintenance of such material, such material shall be provided to such individual, except to the extent that the disclosure of such material would reveal the identity of a source who furnished information to the Government under an express promise that the identity of the source would be held in confidence, or, prior to the effective date of this section, under an implied promise that the identity of the source would be held in confidence[.]

5 U.S.C. § 552a(k)(2).

bility, eligibility, or qualifications for federal employment, or access to classified information. Records governed by the (k)(5) exemption, however, are exempt only to the extent that disclosure of such material would reveal the identity of a source who furnished information to the government under an express promise that the identity of the source would be held in confidence. *See id.* § 552a(k)(5).[7]

## III. THE DISTRICT COURT'S ANALYSIS

The District Court rejected the FBI's argument that its entire Central Records System was exempt under the (j)(2) general exemption. The court held that the (j)(2) general exemption applied only to documents generated in the course of a "criminal investigation or enforcement." Similarly, the court rejected the agency's contention that the entire system of records was exempt from the amendment provisions under the (k)(2) law enforcement exemption.

The FBI also argued that even if the entire system of records were not exempt, the particular documents noted by appellant were exempt under the (k)(2) exemption. The District Court noted that the 1966 and 1979 records were generated by an internal FBI investigation conducted as a result of appellant's application for employment with the FBI. Because this investigation was not directed toward any "specific illegal act," the court deemed that the records were not exempt as law enforcement records under (k)(2). Nonetheless, the court held that the records generated by the 1954 investigation were exempt as "investigatory material compiled for law enforcement purposes" under (k)(2). Because the court concluded that the only records that appellant sought to amend were those generated by the 1954 investigation, it granted the government's motion for summary judgment.[8]

## IV. ANALYSIS

On appeal the FBI defends the summary judgment in its favor with several of the arguments advanced in the District Court. We consider each of the arguments in turn, examining first the statutory language and then the legislative history of the Privacy Act. We conclude that the District Court properly rejected the agency's broad claims of exemption, but erred in its analysis of the specific exemptions applicable to these files.

### A. The Statutory Language

The FBI argues that it has exempted its Central Records System from the demands of the Privacy Act through the promulgation of 28 C.F.R. § 16.96. That rule, however, provides that the Central Records

---

7. Subsection (k)(5) provides:
 The head of any agency may promulgate rules * * * to exempt any system of records within the agency from subsections (c)(3), (d), (e)(1), (e)(4)(G), (H), and (I), and (f) of this section if the system of records is—

 \* \* \* \* \* \*

 (5) investigatory material compiled solely for the purpose of determining suitability, eligibility, or qualifications for Federal civilian employment, military service, Federal contracts, or access to classified information, but only to the extent that the disclosure of such material would reveal the identity of a source who furnished information to the Government under an express promise that the identity of the source would be held in confidence, or, prior to the effective date of this section, under an implied promise that the identity of the source would be held in confidence[.]

 5 U.S.C. § 552a(k)(5).

8. Appellant's amendment requests are contained in his letter and attachments dated December 11, 1980, Brief and Appendix for Appellee at App. 41, and in his letter and attachments of July 1, 1981, *id.* at App. 42–54. Although the bulk of the amendment requests contained in these documents pertain to the records generated by the 1954 investigation, there are several specific requests that seek amendment of the reports generated in 1966 and in 1979. For example, at App. 51–52 appellant challenges the FBI report of his interview in several respects, claiming that the report of the interview erroneously recorded his responses to various questions. Moreover, at App. 53 appellant alleges that the 1979 FBI report fails accurately to report his explanation for failing to note on his 1979 application that he had previously applied to the FBI for a job. Thus it appears that the District Court erred in concluding that appellant sought only to amend those portions of his records generated by the 1954 investigation.

System is exempt "only to the extent that information in this system is subject to exemption pursuant to 5 U.S.C. [§] 552[a][j] and (k)." *Id.* Thus, in order to argue that the records involved in this case are exempt from the demands of the Privacy Act, the FBI must argue either (1) that the (k)(2) exemption was intended to describe a type of agency rather than a type of record, or (2) that the particular records at issue in this case are "law enforcement records" within the meaning of the (k)(2) exemption.

■ The first argument appears to be foreclosed by our holding in *Pratt v. Webster*, 673 F.2d 408 (D.C.Cir.1982). In *Pratt*, this court specifically held that, under the Freedom of Information Act, FBI records are not law enforcement records simply by virtue of the function that the FBI serves. *Id.* at 415 n.14. Instead, the characterization of the records at issue turns upon the type of investigation involved. *Id.* at 420–421. We find this holding applicable in the instant case. Moreover, had Congress wanted to exempt the entire filing system of the FBI, it certainly could have done so. In fact, an early draft of the Privacy Act did exempt the FBI from the mandates of the Act. *See* S. 1688, 93d Cong., 2d Sess. § 9 (1974), *reprinted in* LEGISLATIVE HISTORY OF THE PRIVACY ACT OF 1974: S. 3418 (PUBLIC LAW 93–579) 535 (1976); *see also* S.Rep. No. 93–724, 93d Cong., 1st Sess. 34 (1974) (the Act does not apply to the FBI). The removal of the blanket exception from the final version of the Act suggests that the FBI must demonstrate something more than the mere nature of its functions. The agency's broad interpretation would bring through the back door a provision expressly omitted from the Act as approved by Congress and signed into law.

■ The FBI's second argument is also unavailing. The FBI argues that its records are covered by the (k)(2) exemption because all three investigations were conducted for a law enforcement purpose. The 1954 investigation was mandated by the provisions of 22 U.S.C. § 1434 (1979), *repealed,* Pub.L. No. 96–60, Title II, § 203(a)(1), August 15, 1979, 93 STAT. 398.[9] That statute required the Civil Service Commission to conduct a "loyalty check" on all personnel who were employed or assigned duties by the government. The 1966 and 1979 investigations were conducted pursuant to Executive Order 10450. Thus because all three investigations were conducted to enforce federal law or to protect national security, the FBI argues that the records all fall within the law enforcement records exemption.

We disagree and are persuaded on the record before us that the only exemption applicable to these records is that created by subsection (k)(5). As an initial matter, the terms of (k)(5) appear clear in their applicability. Subsection (k)(5) applies to "investigatory material compiled solely for the purpose of determining suitability, eligibility, or qualifications for Federal civilian [or] military service * * *." 5 U.S.C. § 552a(k)(5). Indeed, it would be difficult to imagine a clearer description of the records at issue in this case.[10]

---

**9.** Section 1434 provided:

> No citizen or resident of the United States, whether or not now in the employ of the Government, may be employed or assigned to duties by the Government under this chapter until such individual has been investigated by the Office of Personnel Management and a report thereon has been made to the Director. This section shall not apply in the case of any officer appointed by the President by and with the advice and consent of the Senate.

22 U.S.C. § 1434 (1979), *repealed,* Pub.L. No. 96–60, Title II, § 203(a)(1), Aug. 15, 1979, 93 STAT. 398. The statute originally required the Civil Service Commission to perform the investigation. 22 U.S.C. § 1434 (1952).

**10.** That these investigations were conducted pursuant to an executive order cannot change the result. Obviously an executive order cannot read subsection (k)(5) out of the Act by making all employment investigations into "law enforcement activity." Nor are we persuaded that the statutory authority for the 1954 investigation compels a different result. Given the broad terms employed by the 1974 Congress in creating the (k)(5) exemption, we see no basis for assuming that it implicitly excluded all records generated by "loyalty checks" performed during

This exemption, however, is subject to a specific limitation: these records are exempt "only to the extent that the disclosure of such material would reveal the identity of a source who furnished information to the Government under an express promise that the identity of the source would be held in confidence * * *." *Id.* Because the government has already disclosed appellant's records, this limitation obviously does not bar appellant's amendment requests.

The statute itself supports this distinction between records generated by a law enforcement investigation and those generated by an employment investigation. As already noted, the former is governed by (k)(2) and the latter is governed by (k)(5). To hold that all employment investigation records fall within the law enforcement records exemption would read subsection (k)(5), with its specific limitation, out of the statute. This we cannot do. *See Mountain States Tel. & Tel. Co. v. Pueblo of Santa Ana*, — U.S. —, —, 105 S.Ct. 2587, 2595, 86 L.Ed.2d 168 (1985) (a court should strive to give effect to all parts of a statute); *Administrator, FAA v. Robertson*, 422 U.S. 255, 261, 95 S.Ct. 2140, 2145, 45 L.Ed.2d 164 (1975) (same).

Thus we find that the statutory language does not support the FBI's interpretation of the statute.[11] The agency, however, also advances an argument based upon the legislative history of the statute. Assuming *arguendo* that resort to the legislative history is necessary, *see Pratt v. Webster, supra*, 673 F.2d at 415 n.14 ("'[r]esort to the legislative history of a statutory provi-

sion is not necessary when the meaning of the provision is plain from its language.'") (quoting *Crooker v. Bureau of Alcohol, Tobacco & Firearms*, 670 F.2d 1051, 1056 (D.C.Cir.1981) (*en banc*)), we find little to support the government's interpretation of the Act.

### B. *The Legislative History*

The FBI argues that, notwithstanding the statutory language, the legislative history supports its interpretation of the statute. It argues that the history makes clear that subsection (k)(2) was intended to apply to investigative material compiled to determine initial or continued eligibility or qualification for federal employment. Supplemental brief for appellee at 7.

The FBI relies primarily on the statements of Congressman Ichord, who proposed the amendment to the Privacy Act that became subsection (k)(2). In his generalized comments offered during the floor debate of the Privacy Act he stated:

> In referring to a "law enforcement activity" and "law enforcement purposes," I am, of course, using the expression "law enforcement" in its general meaning and in the broadest reach of the term. I include within that term those purposes and activities which are authorized by the Constitution, or by statute, or by the rules and regulations and the executive orders issued pursuant thereto. Thus, the investigatory material maintained shall include, but not be limited to, that which is compiled or acquired by any Federal agency in connection with and for the purpose of determining initial or

the 1950's. *Cf.* Pub.L. No. 96–60, *supra* note 9 (repealing § 1434).

**11.** Nor are we persuaded that *Nagel v. U.S. Dep't of Health, Education & Welfare*, 725 F.2d 1438 (D.C.Cir.1984), compels a different result. That case involved the exception created in subsection (e)(7) for "authorized law enforcement activity." As an initial matter, the scope of the exception created by (e)(7) is very narrow—it constitutes an exception to the requirement that an agency may not maintain a record describing the exercise of First Amendment rights. In *Nagel* the court held that an employer may lawfully maintain records describing the activities of

its employees in the performance of their employment obligations. 725 F.2d at 1441. We question whether the (e)(7) exception would permit a similar record to be maintained concerning non-employees. *See id.* at 1441 n.3 ("[o]f course, this 'law enforcement' exception is confined to the employer-employee relationship"). In any case, because *Nagel* involves a wholly separate provision in the Privacy Act and because that case is arguably limited to the employment context, we find the case unpersuasive authority for the broad interpretation of subsection (k)(2) advocated by the government in this case.

continuing eligibility or qualification for Federal employment, military service, Federal contracts, or access to classified information.

120 Cong.Rec. 36651 (November 20, 1974), *reprinted in* LEGISLATIVE HISTORY OF THE PRIVACY ACT, *supra*, at 902. The agency argues that the term "law enforcement purpose" should be broadly construed in light of the sponsor's own definition of the term.

We are not persuaded. We note that this statement of a lone Congressman appeared in none of the reports on the bill, nor did it immediately precede the vote on the amendment. In fact, at the time Congressman Ichord made this statement the amendment that later became subsection (k)(5) had not yet been proposed. Thus, because no alternative provision directly concerned employment records at the time Congressman Ichord made his statement, his interpretation of his amendment *at that time* might well have been reasonable. When his amendment was finally offered and voted on, however, the Act had been amended to include the (k)(5) exemption. *See* 120 Cong.Rec. 36658 (November 20, 1974) (vote approving (k)(5) amendment); 120 Cong.Rec. 36962 (November 21, 1974) (Congressman Ichord proposes (k)(2) exemption). We note that Congressman Ichord did not reiterate his broad interpretation of his amendment when he offered it. In such circumstances, we hesitate to rely on the comments of a single Congressman to read this provision to contradict the express terms of subsection (k)(5).

Finally, we note that nothing in the legislative history of subsection (k)(5) suggests any sort of exception for FBI employment records. *See generally* 120 Cong.Rec. 36655–36658 (November 20, 1974) (debate on (k)(5) amendment offered by Congressman Erlenborn). Indeed, although the debate over this amendment makes clear the concern to protect confidential sources of information, the debate also clearly reveals the intent that such information be subject to the amendment provisions of the Act.

Mr. GOLDWATER. * * *

Mr. Chairman, I rise with certain reservations with regard to this amendment. I likewise am greatly concerned with protecting the rights of applicants for civil service employment and with insuring that the applicants have access to information about him [*sic*] that is furnished by third parties. * * *

\* \* \* \* \* \*

Mr. ERLENBORN, what in this provision provides for the applicant to rebut or to countermand any vicious rumors or subjective opinions or false statements or honest mistakes taken from third parties about an individual?

Mr. ERLENBORN. If the gentleman will yield, the bill itself provides for the first time the right of access by an individual to records maintained concerning himself or herself, and the bill provides that if the individual believes that the information is inaccurate, *he has a right to demand that the information be corrected. This is as to all records generally and can be applicable to these free employment and security investigation files as well. Therefore, the application of the bill—not the amendment—but the application of the bill is such that it provides this right to the individual to demand that a file be made accurate if he considers it to be inaccurate.*

120 Cong.Rec. 36657 (November 20, 1974) (emphasis added). We therefore conclude that Congress did not intend subsection (k)(5) to be so broad as to exempt the records in this case.

## V. CONCLUSION

In sum, we find that on the record before us the government cannot rely on either subsection (k)(2) or subsection (k)(5) to exempt appellant's records from the demands of the Privacy Act. Because the record is underdeveloped, however, we find it necessary to remand the case to the District Court for further proceedings. For example, no explanation has been offered as to why the Civil Service Commission asked the FBI to conduct the 1954

investigation. If specific allegations of illegal activities were involved, then this investigation might well be characterized as a law enforcement investigation. Should the FBI come forward with evidence suggesting a law enforcement purpose other than mere background investigation, the District Court remains free to conclude that the records constitute law enforcement records. So long as the investigation was "realistically based on a legitimate concern that federal laws have been or may be violated or that national security may be breached," *Pratt v. Webster, supra,* 673 F.2d at 421, the records may be considered law enforcement records.

 Moreover, it should be noted that the Privacy Act does not require an agency to maintain perfectly accurate records. Rather, the agency must maintain its records "with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in [any] determination[.]" 5 U.S.C. § 552a(e)(5). Whether the FBI has satisfied the demands of the Privacy Act by the corrections and additions already made to appellant's records, however, should be considered as an initial matter by the District Court.

Consequently, because the District Court erred in its application of the Privacy Act to these records, we remand for reconsideration under the proper legal standard.[12]

*Vacated and remanded.*

12. The government argues that even if the records at issue are governed by the (k)(5) exemption, appellant has already received all of the relief to which he is entitled under the Act. We disagree. Although the statute assuredly guarantees an individual the right to disclosure and to demand that his or her comments be included in the file, *see* 5 U.S.C. § 552a(d)(1) (right to review records); *id.* § 552a(d)(3) (right to file a concise statement of disagreement), it also guarantees an individual the right to demand that his or her records be amended if inaccurate. *See id.* § 552a(d)(2).

Moreover, we find nothing in the legislative history to suggest otherwise. The colloquy between Congressman Goldwater and Congressman Erlenborn, the author of the amendment,

makes it clear that an individual has the right to demand that inaccurate information be corrected.

Mr. GOLDWATER. Is it your understanding that your amendment notwithstanding, the applicant would be allowed to file with this information obtained from a confidential source his own version or his own rebuttal or perhaps his own denial of that accusation or erroneous information?

Mr. ERLENBORN. Yes. Under the terms of the bill itself, that would be a *remedy* available to the individual about whom the file was kept. 120 Cong.Rec. 36657 (Nov. 20, 1974) (emphasis added). We see no implication that this remedy was intended to be exclusive.