John DOE, Plaintiff,

v.

**U.S. DEPARTMENT OF JUSTICE,
et al., Defendants.**

Civ. A. No. 91–2006.

United States District Court,
District of Columbia.

April 13, 1992.

**18**

Plaintiff appeared pro se.

Madelyn E. Johnson, Asst. U.S. Atty., Washington, D.C., for defendants.

## MEMORANDUM

GESELL, District Judge.

Plaintiff Doe seeks full access to records of the FBI developed during a background investigation into plaintiff's suitability for employment by the Department of Justice. Access to these records is sought by invoking the Privacy Act, the Freedom of Information Act ("FOIA"), and the Fifth Amendment of the Constitution. The Department has moved for summary judgment and plaintiff has moved for a detailed *Vaughn* index. The issues have been fully briefed and various motions are ripe for decision.

Doe, an experienced attorney, received a conditional offer of excepted employment from an agency of the Department of Justice in March, 1988. The position involved is not covered by the competitive Civil Service. Prior to making a final offer of employment, the Department requested the FBI to conduct a standard background check, which is routinely made of its prospective employees under authority of Executive Order 10450 and delegation from the Office of Personnel Management. After the investigation was completed, the offer of employment was withdrawn in December, 1988. No reason for withdrawal was stated. After Doe was unable to obtain by administrative proceedings a complete copy of the background investigation records, the complaint in this action was filed on August 9, 1991.

Doe vigorously challenges the partial disclosures made in response to his requests at the administrative level. Not only does he attack all redactions and exemptions claimed, but he also attacks the sufficiency of the coded *Vaughn* index and the good faith of the FBI's responses. He therefore demands broad rights to discovery with a view to questioning the sufficiency of the search and to confronting confidential sources whose identity is being protected by the Department. Doe asks the Court, among other things, to rescind the withdrawal of his conditional appointment and to allow amendment of any perceived inaccuracies in the background investigative records and in the accompanying opinions of persons who were interviewed. Pending completion of this long process, he asks the Court to retain jurisdiction in order to prevent any use of the investigative materials while he attempts to correct adverse information developed during the background interviews.

After examining the *Vaughn* index and the materials from the investigative records that had previously been furnished to Doe in redacted form, the Court, by Order dated February 24, 1992, requested—and has since received and personally perused—the full and complete text of all documents withheld under any of the FOIA or Privacy Act exemptions, including all documents that contain information adverse to Doe which either precipitated or in any way influenced or contributed to the withdrawal of the conditional offer of employment. Based on this examination, the Court has determined that the investigatory file does not specify any particular reason for the withdrawal of the job offer, and that the personnel file, which apparently consists only of Doe's employment application, contains no reference to withdrawal of the offer.

The investigative material, much of which has been released to Doe with partial redaction, discloses a thorough, consci-

entious, routine inquiry into Doe's suitability for employment in the position he was conditionally offered. It includes information about, for example, Doe's performance and inter-personal relationships in past jobs and his professional competence and characteristics in and out of court. A variety of favorable and unfavorable opinions are expressed, occasionally illustrated by examples volunteered by the people interviewed. Many interviews balance both favorable and less favorable comments. None of the information raises any questions about Doe's loyalty, professional ethics, or his private life.

Given these circumstances and the fact that Doe's conditional employment was not covered by protections afforded individuals in the competitive Civil Service, Doe's demand can now be addressed in rational terms under established precedent.

■ Investigative background checks performed by the FBI are a system of records governed by the Privacy Act. *See Vymetalik v. FBI*, 785 F.2d 1090, 1095 (D.C.Cir.1986). Defendants claim, however, that most of the pertinent information being withheld falls within the protection afforded by exemptions (k)(2) and (k)(5) of the Privacy Act, 5 U.S.C. § 552a(k)(2), (5). Exemption (k)(5) is directly applicable to the present situation. That exemption provides that an agency may exempt from Privacy Act disclosure:

> investigatory material compiled solely for the purpose of determining suitability, eligibility, or qualifications for Federal civilian employment ... but only to the extent that the disclosure of such material would reveal the identity of a source who furnished information to the Government under an express promise that the identity of the source would be held in confidence....

The background investigation performed by the FBI is directed specifically at determining a prospective Justice Department employee's suitability. *See Vymetalik*, 785 F.2d at 1095–96. In responding to plaintiff's requests for information—as has been confirmed by the Court's examination of the unredacted documents—the Department has complied with its own regulations promulgated pursuant to exemption (k)(5) by withholding only those portions of documents that would reveal the identity of a source who specifically requested confidentiality. *See* 28 C.F.R. §§ 16.71, 16.96. Defendants' response to plaintiff's Privacy Act request in this regard was proper.

■ Defendants have withheld the same information from plaintiff's FOIA request under FOIA exemption (b)(7)(D), 5 U.S.C. § 552(b)(7)(D),[1] and because the language of FOIA exemption (b)(7)(D) is substantially coextensive with Privacy Act exemption (k)(2), defendants have also invoked exemption (k)(2) as an alternative ground for withholding the documents from the Privacy Act request. *See Doe v. F.B.I.*, 936 F.2d 1346, 1353 (D.C.Cir.1991). Exemptions (b)(7)(D) and (k)(2) may be dealt with together in this instance, although the Court's holding above relating to exemption (k)(5) makes the invocation of (k)(2) unnecessary.

Exemption (b)(7)(D) exempts from FOIA disclosure:

> records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ... (D) could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, in-

---

1. It is well established that the Privacy Act and FOIA provide separate routes for obtaining information. Where, as here, a person files requests under both Acts, an exemption must apply from each Act in order for the material to be withheld. *See* 5 U.S.C. § 552a(t); *Martin v. Office of Special Counsel, Merit Systems Protection Board*, 819 F.2d 1181, 1184 (D.C.Cir.1987); *Simon v. Department of Justice*, 752 F.Supp. 14, 22 (D.D.C.1990).

formation furnished by a confidential source.... [2]

The issue in this case is whether the background check qualifies under the exemption. To be exempt, the records must, as a threshold matter, have been for law enforcement purposes. This Circuit has held that, although the records of the FBI do not *per se* meet this requirement, an assertion by the FBI that the records are for a law enforcement purpose is entitled to deference because the FBI is a law enforcement agency. *See Pratt v. Webster*, 673 F.2d 408, 414, 418–419 (D.C.Cir.1982).

▆▆▆ Under *Pratt*, a record must satisfy a two-part test to be considered to have a law enforcement purpose:

> First, the agency's investigatory activities that give rise to the documents sought must be related to the enforcement of federal laws or to the maintenance of national security.... Second, the nexus between the investigation and one of the agency's law enforcement duties must be based on information to support at least "a colorable claim" of its rationality.

*Id.* at 420–21 (emphasis omitted). Although it has been held that not every background check automatically qualifies under this test, *see Vymetalik*, 785 F.2d at 1096, in this case the additional circumstances suggest that this background check should.

Background checks of officials like Doe, who was conditionally offered employment as an attorney with the Executive Office for Immigration Review, Board of Immigration Appeals, in the Department of Justice, are conducted pursuant to Executive Order 10450. *See* 18 Fed.Reg. 2489 (April 29, 1953). The Executive Order authorizes such checks as the result of its finding that "the interests of the national security re-

quire" that government employees be "reliable, trustworthy, of good conduct and character, and of complete and unswerving loyalty to the United States." *Id.* at 2489. Despite the holding of *Vymetalik* that some background checks could conceivably be not for law enforcement purposes, the prevailing trend is to find that such checks do qualify for (b)(7) protection. *See* Burt A. Braverman & Frances J. Chetwynd, 1 *Information Law* § 11–4.2 at 445 (1985 and 1990 Supp.); *Koch v. Department of Justice*, 376 F.Supp. 313, 315 (D.D.C.1974) (allowing withholding of confidential information obtained in a background check for person being considered for high government posts).

In Doe's case in particular, the protection should apply because Doe was applying for a job with a law enforcement agency and would himself have been responsible for both law enforcement and national security matters. *Cf. Pratt*, 673 F.2d at 420 & n. 32 (stating that the "law enforcement provision" is to be construed broadly and that the reference to national security investigations extends the protections beyond mere civil or criminal law enforcement). While it is true that the FBI did not uncover any information to suggest that Doe was a security risk or that his loyalty is in any way questionable, it is not the findings of the investigation that are significant; it is the purpose of the investigation that matters under both (b)(7) and (k)(2). Here, the principal purpose was to assure that a prospective Justice Department employee had not himself broken the law, and to determine whether there are any law enforcement or security issues in his past that could affect his ability, as a senior employee of the nation's primary law enforcement and security agency, to carry out the De-

---

**2.** Exemption (k)(2) provides that an agency may exempt from Privacy Act disclosure:

> investigatory material compiled for law enforcement purposes, other than material within the scope of subsection (j)(2) of this section: *Provided, however,* That if any individual is denied any right, privilege, or benefit that he would otherwise be entitled by Federal law, or for which he would otherwise be eligible, as a result of the maintenance of

such material, such material shall be provided to such individual, except to the extent that the disclosure of such material would reveal the identity of a source who furnished information to the Government under an express promise that the identity of the source would be held in confidence, or, prior to the effective date of this section, under an implied promise that the identity of the source would be held in confidence; ....

partment's mission. *Cf. Willner v. Thornburgh*, 928 F.2d 1185, 1192 (D.C.Cir.) (stating that, "as the nation's leading law enforcement agency" the Justice Department "is not just any employer" and that it "has a legitimate interest in maintaining public confidence and trust"), *cert. denied,* — U.S. ——, 112 S.Ct. 669, 116 L.Ed.2d 760 (1991).[3] With the threshold requirement that the information have been collected for law enforcement purposes having thus been met, the more specific requirements of (b)(7)(D) are easily satisfied as well. The agency withheld only that information that might reveal the identity of its confidential sources. The invocation of (b)(7)(D) was proper.[4]

The protection of confidential sources under both the Privacy Act and FOIA represents a clear and necessary national policy which the courts have consistently upheld by a liberal reading of the relevant exemptions. *See, e.g., Keys v. Department of Justice*, 830 F.2d 337, 340, 345 (D.C.Cir. 1987). If the FBI loses its authority in background investigations to protect its confidential sources, its ability to function will be seriously impaired. As an enforcement agency, the Justice Department's mission often requires that certain of its employees meet particularly exacting standards of character and competence. *Cf.* Executive Order 10450, *supra*, at 2489 (providing that the scope of a background "investigation shall be determined in the first instance according to the degree of adverse effect the occupant of the position sought to be filled could bring about, by virtue of the nature of the position, on the national security"). Without the ability to gather frank appraisals of a candidate's suitability, the Department will not be able to assure that it employs people who meet those standards. The record is clear that the agents conducting the investigation of Doe harbored no animosity or indeed any other feeling toward him one way or the other, and that, in its background investigation of Doe, the FBI was not straying beyond its mandated purpose. *See Shaw v. F.B.I.*, 749 F.2d 58, 63–64 (D.C.Cir.1984).

Doe can, of course, as he does, challenge the sufficiency of the *Vaughn* index that was submitted by defendants. However, the Court's *in camera* inspection has convinced the Court that a meaningful description beyond that provided by the *Vaughn* code utilized in this case would probably lead to disclosure of the identity of sources who were interviewed under an explicit promise of confidentiality. In investigations such as this one, in which the sources are well known to the applicant and often include former supervisors, professional colleagues, and friends, the Bureau must be especially careful to protect even the most oblique indications of identity, in order to protect the identity of the confidential interviewees. *See Pollard v. F.B.I.*, 705 F.2d 1151, 1155 (9th Cir.1983).

██ Doe's request that the Court direct the FBI to ask the sources to waive their prior requests for confidentiality is similarly improper. Information obtained from people who did not request confidentiality has already been released without redactions, and much information that was obtained from sources who did request confidentiality, to the extent that it does not indicate the identity of the source, has also been released. Some sources who sought confidentiality endorsed Doe's candidacy in spite of having made some less than favorable comments. In the absence of stigmatizing facts, however, as opposed to opinions, the FBI is not required to try to persuade people to change their minds; nor does the situation presented offer any pros-

---

3. The fact that the Department sometimes withdraws offers of employment once it has found evidence of criminal or otherwise wrongful activity in an applicant's past indicates that the investigation, which can result in at least that sanction, does have an enforcement aspect in regard to current and potential applicants. *See Pratt*, 673 F.2d at 420–21.

4. Exemption (k)(2) allows all law enforcement investigatory material to be withheld, unless a right, privilege, or benefit, to which the individual is entitled under federal law, is at stake, in which case, the identities of confidential sources may be protected. Here, as the Court notes below, Doe has no entitlement to a job with the Justice Department, and the material is therefore properly withheld in its entirety under (k)(2).

pect that such requests for confidentiality would now be waived. No need for Court intervention in this regard has been shown. To require the FBI on a regular basis to urge its sources to waive confidentiality would. undermine the Bureau's effectiveness; and the present case presents no unusual circumstances warranting special treatment.

■ Additional miscellaneous issues arising under FOIA and the Privacy Act pursuant to plaintiff's requests involve investigatory information that cannot possibly be of any concern to Doe. In particular, the names of agents involved in the investigation are properly protected from disclosure, *see Nolan v. Department of Justice*, No. 89–A–2035, slip op. at 16, 1991 WL 36547 (D.Colo. March 18, 1991); internal administrative codes and procedures are protected by 5 U.S.C. § 552(b)(2); and third-party information provided by outside law enforcement entities, which does not implicate Doe directly or indirectly, is protected by 5 U.S.C. § 552(b)(6) and (7). Papers involving and prepared in anticipation of litigation are also subject to protection. *See* 5 U.S.C. § 552(b)(5).

■ In reliance on 5 U.S.C. § 552a(e)(5), Doe seeks discovery to develop a wholly unsupported contention that the investigative records are incomplete. Nothing in the *in camera* filing suggests incompleteness or tampering with the file. The Privacy Act section cited is not intended to provide a license for a requester to seek out all persons involved in a background investigation so as to test the completeness of the record developed. Doe has failed to demonstrate any justification for this request.

■ Finally, Doe challenges the refusal of the Department to release the information requested in the FOIA/Privacy Act requests, on the ground that, under the Fifth Amendment, he is entitled to know the reasons for withdrawal of the offer and to have a hearing to rebut any information in his file. Doe's contention is without merit, however, because Doe had no right or entitlement to be employed by the Department, and there is in the file no record creating the type of stigma or allegation

that the Constitution or laws allow him to question. Because no protected right or liberty interest is involved, Doe can invoke no Fifth Amendment right to the job he sought. *See Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972).

This litigation has in many respects been wholly unnecessary and unduly time-consuming because Doe's demands throughout the process have been excessive and inappropriate. For example, Doe now demands a search of all 59 FBI field offices for information responsive to his requests, although Doe never made that demand in his initial FOIA/Privacy Act letters. In any case, the background investigation was ordered from FBI Headquarters and, by regulation, all results are funneled into Headquarters for consideration. *See* Defs.' Surreply Ex. 2 (excerpts from FBI Manual of Investigative Operations and Guidelines).

Doe continually cites regulations applicable to the competitive Civil Service, even though his selection was an excepted position, in no way governed by these regulations. Doe sought a job as Attorney–Advisor to an Executive Officer of one of the Department of Justice agencies. The FBI pre-employment investigation was thus not a Civil Service matter governed by the Federal Personnel Manual and the regulations at 5 C.F.R. §§ 731 and 754; and those provisions are therefore inapplicable.

Doe's misapprehensions are further illustrated by his suggestion that the Court retain jurisdiction to assure correction of his personnel file. As far as appears, that file consists only of the conditional offer of a job. But in any event, this is not an action pursuant to 5 U.S.C. § 552a(g)(1)(A) because plaintiff did not exhaust his administrative remedies prior to filing suit in this Court by making a request to the agency for correction of the records. The accuracy of the personnel file is not being tested. Even if it were, this Circuit has recently emphasized that the Privacy Act does not authorize an effort to correct perceived inaccuracies in materials relating to the judgments of federal officials or others. *See*

*Kleiman v. Department of Energy,* 956 F.2d 335, 338 (D.C.Cir.1992).

The Court suggests that the FBI clarify the status of background checks it conducts of potential employees in order to avoid confusing cases such as this. To aid in the resolution of future controversies, what needs to be detailed with more precision is the use that is made of background materials after the employment decision is made. Two issues in particular might affect the manner in which courts treat suits arising under the Privacy Act over such investigatory materials: (1) Is the material destroyed or kept on file for a substantial period? and (2) To what extent is the material released to prospective employers or otherwise in response to inquiries from within or outside the federal government? While these issues need not be confronted in this case, the course of Privacy Act litigation involving government employment will be simplified if these issues are decisively clarified. There is every indication that the background records are mainly for temporary use and only formal personnel files are released, but the Court has been unable to find express regulations to this effect.

These comments are not to be taken as any suggestion by the Court that an applicant such as Doe has reason to claim that the FBI is in any way barred from gathering the type of background information obtained in this instance for prospective Department of Justice personnel. Such an investigation is fully authorized. Only by conducting this type of investigation can the FBI ascertain an applicant's security and suitability for federal employment. It performs this function in routine, objective fashion.

Doe has wholly failed to demonstrate any violation of his rights under the Privacy Act, FOIA, or the Constitution. The motion of defendant is granted and the complaint is dismissed. An appropriate Order is filed herewith.

### ORDER

For the reasons stated in the accompanying Memorandum, it is hereby

ORDERED that plaintiff's motion for a detailed *Vaughn* index is denied; and it is further

ORDERED that plaintiff's motion to compel discovery is denied; and it is further

ORDERED that defendants' motion for summary judgment is granted; and it is further

ORDERED that the complaint is dismissed with prejudice.