W. Lee **BIRCH**, Appellant,

v.

**UNITED STATES POSTAL SERVICE, et al.**

**No. 84–5820.**

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 1, 1985.

Decided Oct. 24, 1986.

James J. Featherstone, Washington, D.C., for appellant.

Linda A. Ruiz, Sp. Asst. U.S. Atty., of the Bar of the District of Columbia, pro hac vice by special leave of Court, with whom Joseph E. diGenova, U.S. Atty., Royce C. Lamberth, R. Craig Lawrence and Charles F. Flynn, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellees.

Before ROBINSON and STARR, Circuit Judges, and WRIGHT, Senior Circuit Judge.

Opinion for the Court filed by Circuit Judge SPOTTSWOOD W. ROBINSON, III.

SPOTTSWOOD W. ROBINSON, III, Circuit Judge:

This case is before us on appeal from a summary judgment in favor of the United States Postal Service immunizing from mandatory disclosure ·parts of records sought by W. Lee Birch under the Freedom of Information Act (FOIA).[1] The records in question were compiled during an investigation uncovering mailings under a third-class permit of materials not encompassed thereby. The District Court ruled[2] that the portions withheld were intercepted by FOIA Exemption 7(D) as "investigatory records compiled for law enforcement purposes" whose production would "disclose the identity of a confidential source."[3] We affirm.

I

Birch is executive director of the National Taxidermists Association (NTA). In 1980, the Postal Service denied his application for a permit enabling NTA to mail its materials at special third-class postage

---

1. 5 U.S.C. § 552 (1982).

2. *Birch v. United States Postal Serv.*, Civ. No. 83–3071 (D.D.C. Oct. 17, 1984) (memorandum and order), Appellant's Appendix (A.App.) 11.

3. 5 U.S.C. § 552(b)(7)(D).

rates.[4] Shortly thereafter, however, the National Taxidermists Hall of Fame and Museum, on Birch's application once again, was granted such a permit.[5]

About two years later, the Postal Service received a letter from a United States Attorney suggesting that Birch was mailing NTA materials under the Hall of Fame permit.[6] The letter stated that a complaint had been received from an NTA member alleging this misuse of the permit,[7] and that the informant had furnished specimens supporting the accusation.[8]

Surveillance of subsequent mailings under the permit revealed that the charge was true and that the practice was continuing. Thereafter, the Postal Service informed Birch and the Hall of Fame that postage for all improper mailings had been recalculated and that some $2,200 was owed.[9] This amount represented the difference between postage at the permit rate and postage that should have been paid.[10]

Birch then submitted a FOIA request for all records pertaining to the permit, the organizations and himself.[11] The Postal Service eventually released 124 pages of documents, but deleted data from some of these pages and retained five additional pages in their entirety.[12] The bases advanced for this action were FOIA Exemptions 7(C) and 7(D),[13] which safeguard from mandatory disclosure, under specified conditions, investigatory records compiled for law enforcement purposes. Exemption 7(C) does so when public release of the records would "constitute an unwarranted invasion of personal privacy."[14] Exemption 7(D) is triggered into operation when disclosure would reveal the "identity of a confidential source."[15] Uncontested Postal Service affidavits avowed that the portions withheld consisted solely of information that could be used to identify the NTA member who had reported the mailing abuse, including his name, the name of his agent[16] and their addresses.[17]

Birch endeavored to upset the agency's disposition in the District Court, which deemed the withholding appropriate under Exemption 7(D).[18] The court held that the agency activity generating the records was an "investigation,"[19] and that the records were "compiled for law enforcement purposes" because the investigation "'focus[ed] directly on specifically alleged illegal acts ... which could, if proved, result in civil or criminal sanctions.'"[20] Thus, the court concluded, the parts withheld were exempt because their production would divulge the identity of a confidential source.[21]

## II

FOIA pursues a policy of broad disclosure of governmental records to "ensure an informed citizenry, vital to the function-

4. A.App. 47.

5. A.App. 48.

6. A.App. 59.

7. A.App. 59.

8. A.App. 60.

9. A.App. 44–46.

10. A.App. 46.

11. A.App. 26–27.

12. A.App. 28.

13. A.App. 28; see 5 U.S.C. § 552(b)(7)(C), (b)(7)(D) (1982).

14. 5 U.S.C. § 552(b)(7)(C).

15. *Id.* § 552(b)(7)(D).

16. The agent was described at one point in Postal Service correspondence with Birch as the member's attorney. A.App. 28.

17. Affidavit of Kenneth H. Fletcher ¶ 4, A.App. 21–22; Affidavit of Charles D. Hawley ¶ 7, A.App. 25.

18. *Birch v. United States Postal Serv., supra* note 2, A.App. 11.

19. *Id.* at 3, A.App. 13.

20. *Id.* at 4 (quoting *Rural Hous. Alliance v. United States Dep't of Agriculture,* 162 U.S.App.D.C. 122, 130, 498 F.2d 73, 81 (1974)), A.App. 14.

21. *Birch v. United States Postal Serv., supra* note 2, at 6, A.App. 16.

ing of a democratic society." [22] Recognizing, however, that harm could result from a sweeping disclosure requirement in some areas, Congress incorporated into FOIA a series of exemptions enabling agencies to refuse requests for public access to specified types of information.[23] The agency bears the burden of setting forth "a relatively detailed justification" for assertion of an exemption,[24] and must demonstrate to a reviewing court that records withheld are clearly exempt.[25]

In this court, the Postal Service relies solely upon Exemption 7(D), which shields "investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would ... disclose the identity of a confidential source...." [26] The litigants present several issues, and the course we must steer in resolving them is well-charted. The Supreme Court has instructed that

> [t]he language of ... Exemption [7] indicates that judicial review of an asserted Exemption 7 privilege requires a two-part inquiry. First, a requested document must be shown to have been an investigatory record "compiled for law enforcement purposes." If so, the agency must demonstrate that release of the material would have one of the six results specified in the Act.[27]

We turn, then, to consider whether the Postal Service's retention of portions of the records requested survives that examination.

## III

The threshold requirement of Exemption 7—that the data sought are "investigatory records compiled for law enforcement purposes"—demands careful analysis of the authorized activities of the agency involved, both generally and with particular reference to the matter to which the records relate. At the outset, it is important to distinguish an agency serving principally the cause of criminal law enforcement from one having an admixture of law enforcement and administrative functions.[28] While this distinction is not drawn explicitly in the text of Exemption 7 or its legislative history, this court and others have recognized the need to differentiate the criteria guiding the threshold decision on Exemption 7 claims on the basis of the primary mission the agency pursues.[29]

In *Rural Housing Alliance v. United States Department of Agriculture,* [30] we articulated the standard for evaluating contentions that records of a mixed-function agency are "investigatory files compiled for law enforcement purposes." We realized that application of a broad or imprecise construction of this provision to such an agency could "swallow[ ] up" FOIA and undercut its central goal of public access,[31] since any routine monitoring "conceivably could result" in imposition of penalties.[32]

**22.** *FBI v. Abramson,* 456 U.S. 615, 621, 102 S.Ct. 2054, 2059, 72 L.Ed.2d 376, 383 (1982) (quoting *NLRB v. Robbins Tire & Rubber Co.,* 437 U.S. 214, 242, 98 S.Ct. 2311, 2327, 57 L.Ed.2d 159, 178 (1978)).

**23.** See 5 U.S.C. § 552(b)(1)–(9) (1982).

**24.** E.g., *Mead Data Cent., Inc. v. United States Dep't of the Air Force,* 184 U.S.App.D.C. 350, 359, 566 F.2d 242, 251 (1977).

**25.** See, e.g., *Vaughn v. Rosen,* 157 U.S.App.D.C. 340, 343, 484 F.2d 820, 823 (1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974).

**26.** 5 U.S.C. § 552(b)(7)(D) (1982).

**27.** *FBI v. Abramson, supra* note 22, 456 U.S. at 622, 102 S.Ct. at 2059, 72 L.Ed.2d at 383–84.

**28.** *Pratt v. Webster,* 218 U.S.App.D.C. 17, 25–27, 673 F.2d 408, 416–18 (1982).

**29.** *Id.; Church of Scientology v. United States Dep't of the Army,* 611 F.2d 738, 748 (9th Cir. 1979). See also *Malizia v. United States Dep't of Justice,* 519 F.Supp. 338, 347–48 (S.D.N.Y. 1981).

**30.** *Supra* note 20.

**31.** *Rural Hous. Alliance v. United States Dep't of Agriculture, supra* note 20, 162 U.S.App.D.C. at 130, 498 F.2d at 81.

**32.** *Id.*

We held that in the context of a mixed-function agency Exemption 7 embraces only "investigations which focus directly on specifically alleged illegal acts, illegal acts of particular identified officials, acts which could, if proved, result in civil or criminal sanctions."[33] We emphasized that the purpose of the investigation was "the crucial factor;"[34]—that, to cross Exemption 7's threshold, the information at issue must have been gathered in the course of "an inquiry as to an identifiable possible violation of law."[35]

In *Pratt v. Webster*,[36] on the other hand, we held that claims of satisfaction of Exemption 7's threshold requirement call for less rigorous judicial scrutiny when the principal function of the involved agency is criminal law enforcement.[37] We reiterated the *Rural Housing Alliance* standard and, for its application to such agencies, reformulated it to take into account their special features. "In order to pass the FOIA Exemption 7 threshold," we said, a criminal law enforcement agency

> must establish that its investigatory activities are realistically based on a legitimate concern that federal laws have been or may be violated or that national security may be breached[,] [and] [e]ither of these concerns must have some plausible basis and have a rational connection to the object of the agency's investigation.[38]

## IV

Since the Postal Service obviously is a mixed-function agency, *Rural Housing Alliance* informs our consideration of the question whether the Postal Service's withholding of parts of the sought-after records has navigated successfully across the threshold of Exemption 7.[39] We think that beyond peradventure it has.

The Postal Service's surveillance begetting the requested records was prompted by and based upon information transmitted to it by a United States Attorney after receipt from a member of NTA. From the beginning, the Postal Service concentrated its vigil exclusively upon mailings utilizing the Hall of Fame permit to see whether there was any misuse. It therefore is clear that the records accumulated were products of an "investigation"[40] focused directly on specific activities by specific participants.

It seems equally clear that these records were "compiled for law enforcement purposes." We are mindful that the investigation conducted by the Postal Service resulted only in an assessment of slightly more than $2,000, representing the difference between the aggregate amount actually paid for mailings of NTA materials under the Hall of Fame permit and the aggregate amount that should have been paid as postage for those mailings at the proper rate. We are also advertent to Birch's argument that this assessment had no punitive aspect

---

33. *Id.* See also *id.* n. 47 (quoting *Center for Nat'l Policy Review on Race and Urban Issues v. Weinberger*, 163 U.S.App.D.C. 368, 371, 502 F.2d 370, 373 (1974).

34. *Rural Hous. Alliance v. United States Dep't of Agriculture, supra* note 20, 162 U.S.App.D.C. at 131, 498 F.2d at 82.

35. *Id.*

36. *Supra* note 28.

37. *Pratt v. Webster, supra* note 28, 218 U.S.App. D.C. at 27–28, 673 F.2d at 418–19.

38. *Id.* at 30, 673 F.2d at 421.

39. We have no reason to doubt the continuing vitality of *Rural Hous. Alliance.* While FOIA

was amended after *Rural Hous. Alliance,* the phrase "law enforcement purpose," which that opinion construed, was left unchanged; and while the legislative history echoes congressional dissatisfaction with four decisions in this circuit expanding the scope of Exemption 7, *Rural Hous. Alliance* was not one of them. See *Pratt v. Webster, supra* note 28, 218 U.S.App.D.C. at 26 & nn. 20–22, 28 n. 27, 673 F.2d at 417 & nn. 20–22, 419 n. 27.

40. "[W]here the inquiry departs from the routine and focuses with special intensity upon a particular party, an investigation is under way." *Center for Nat'l Policy Review on Race and Urban Issues v. Weinberger, supra* note 33, 163 U.S.App.D.C. at 371, 502 F.2d at 373 quoted in *Rural Hous. Alliance v. United States Dep't of Agriculture, supra* note 20, 162 U.S.App.D.C. at 130 n. 47, 498 F.2d at 81 n. 47.

and involved no more than satisfaction of a debt owed to the Postal Service, with the consequence that no law-enforcement purposes can be attributed to the investigation.[41] Even assuming that the assessment was not a sanction imparting a law enforcement element—a question we do not decide—we find Birch's position untenable.

An NTA member reported that Birch was improperly mailing NTA materials, concealed in envelopes bearing only a reproduction of the Hall of Fame's letterhead, under the Hall of Fame's third-class mailing permit.[42] The Postal Service investigator assigned to the case felt that misuse of the Hall of Fame permit so soon after its issuance raised a suspicion that the permit was obtained for the purpose of avoiding the higher postal rates applicable to NTA.[43] The activities under investiga-

tion, then, if they actually occurred, would not only violate postal regulations,[44] but would also implicate criminal statutes penalizing any inclusion of higher-class mail matter in that of a lower class,[45] and any concealment of material information from the Postal Service.[46] The Second Circuit has held that each of these two provisions was violated by placement in the mails of packages labeled "books" but actually containing nylon stockings.[47] We would agree, and are unable to exonerate the mailings in the case at bar. The Postal Service has statutory authority to investigate and enforce laws regarding use of mails and other postal matters,[48] and, given that Birch's conduct could have led to imposition of criminal sanctions, Exemption 7 applies regardless of the actual outcome of the investigation.[49]

**41.** Brief for Appellant at 21, 28.

**42.** United States Postal Service, Investigative Memorandum, 1, A.App. 50.

**43.** A.App. 68, 69. The investigator, John P. Callinan, discussed this suspicion at a meeting with the manager of the Cleveland Mail Classification Office, A.App. 69, and in an interview with Birch himself, A.App. 68.

**44.** The regulations prohibit the mailing of material by an organization under another's special mailing permit unless the organization using the permit is individually authorized to mail at the special rate. See Domestic Mail Manual § 623.-52, A.App. 10.

**45.** "Whoever knowingly conceals or incloses any matter of a higher class in that of a lower class, and deposits the same for conveyance by mail, at a less rate than would be charged for such higher class matter, shall be fined not more than $100." 18 U.S.C. § 1723 (1982).

**46.** "Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both." *Id.* § 1001. In submitting the special permit application on behalf of the Hall of Fame, Birch was required to certify that the statements made therein were true and complete, and that he understood that any permit issued could only be used for Hall of Fame mailings and could not be transferred or extend-

ed. Application to Mail at Special Bulk Third-Class Rates, National Taxidermists Hall of Fame (Sept. 2, 1980), A.App. 48. Birch's certification to that effect would certainly have constituted an unlawful misstatement if he sought the permit in order to avoid paying higher postage for NTA mailings. Cf. *City of Bedford v. FERC,* 231 U.S.App.D.C. 126, 130, 718 F.2d 1164, 1168 (1983) (since the Federal Power Act requires that all interested parties appear on a licensing application, "*any* applicant for a license or permit who intends to cede operating control of the project to a nonapplicant files an invalid and perhaps unlawful application [under 18 U.S.C. § 1001 (1982) ]") (emphasis in original). The Postal Service, in its brief on appeal, refers us also to 18 U.S.C. § 1341 (1982). Brief for Respondents at 9–10. Our disposition removes any need to consider the latter provision.

**47.** *United States v. Baumgarten,* 300 F.2d 807, 808 (2d Cir.), *cert. denied,* 370 U.S. 917, 82 S.Ct. 1556, 8 L.Ed.2d 499 (1962).

**48.** 18 U.S.C. § 3061 (1982).

**49.** *Pratt v. Webster, supra* note 28, 218 U.S.App. D.C. at 30, 673 F.2d at 421. See also *Stern v. FBI,* 237 U.S.App.D.C. 302, 308, 737 F.2d 84, 90 (1984) ("[t]he fact that the investigation did not end in prosecution does not remove it from Exemption 7"); *Rural Hous. Alliance v. United States Dep't of Agriculture, supra* note 20, 162 U.S.App.D.C. at 128, 498 F.2d at 79 ("[d]espite the fact that no prosecution or other such method of law enforcement was undertaken or pending, the files remained exempt from disclosure").

## V

 Remaining for consideration is the question whether the Postal Service met the second prong of the *Abramson* test: whether, with "investigatory records compiled for law enforcement purposes," their release would produce one or more of the consequences specified in Exemption 7.[50] Since the Postal Service endeavors to justify withholding of parts of those records on the basis of Exemption 7(D), the relevant inquiry is whether divulgence of those parts would "disclose the identity of a confidential source." [51]

Exemption 7(D) was intended to protect the identity of a person supplying information during the course of an investigation pursuant to an express or implied assurance of confidentiality.[52] Through submission of affidavits and production of records for *in camera* review, the Postal Service demonstrated that release of the information withheld would reveal the identity of the NTA member who exposed Birch's abuse of the Hall of Fame's mailing privilege. Since the informant requested and received express assurances of confidentiality prior to assisting the investigation,[53] he or she was a "confidential source."

Birch makes two arguments in an attempt to avoid these conclusions. He first contends that revelation of the informant's identity would result in mere embarrassment rather than physical harm, and from this Birch deduces that the informant was not a "confidential source" within the contemplation of Exemption 7(D).[54] This position has glaring weaknesses, not the least of which is that it misinterprets the paramount objective of Exemption 7(D), which is to keep open the Government's channels of confidential information.[55] Potential embarrassment, as well as apprehension of physical harm, may discourage a confidential source from communicating information, and thus result in loss of the benefit of that information to the Government.

Birch further contends that the identity of the informant's "agent" is unprotected because the agent, unlike the informant, received no assurance of confidentiality.[56] That argument misses the point. As the Postal Service has shown, information identifying the agent was withheld, not because the agent was himself or herself a confidential source, but because the agent's identity could be used to identify the informant.[57] Information serving to identify the agent was therefore properly withheld.

The judgment of the District Court is

*Affirmed.*

---

50. See text *supra* at note 27.

51. See 5 U.S.C. § 552(b)(7)(D) (1982).

52. "The [use] of the term 'confidential source' in section 552(b)(7)(D) is to make clear that the identity of a person other than a paid informer may be protected if the person provided information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred." S.Rep. No. 1200, 93d Cong., 2d Sess., 13, *reprinted in* [1974] U.S.Code Cong. & Ad.News 6267, 6285, 6291.

53. See Affidavit of Kenneth H. Fletcher ¶ 5, A.App. 22.

54. Brief for Appellant at 31.

55. 120 Cong.Rec. 3461 (1974) (Joint Statement of Senator Edward M. Kennedy and Representative William S. Moorhead); *id.* at 34167 (statement of Representative William S. Moorhead); *id.* at 36871 (statement of Senator Philip A. Hart); *id.* at 36877–36878 (statement of Senator Robert C. Byrd); see *Church of Scientology v. United States Dep't of Justice,* 612 F.2d 417, 426 (9th Cir.1979).

56. Brief for Appellant at 29–31.

57. See Affidavit of Charles D. Hawley ¶ 7, A.App. 25.