Donald RAULERSON, Sr., Plaintiff,

v.

John ASHCROFT U.S. Attorney General, Defendant.

No. CIV.A. 95–2053(RMU).[1]

United States District Court, District of Columbia.

March 29, 2002.

1. Both parties in this case mistakenly filed the motions at bar under C.A. 96–0129, which was closed on Febuary 6, 1999. The motions should have been filed in C.A. 95–2053.

Donald Raulerson, Sr., Apache/B, FCI Marianna, Marianna, FL, Pro Se Plaintiff.

Edward D. Alkalay, Assistant United States Attorney, Washington, DC, Counsel for the Defendant.

## MEMORANDUM OPINION

URBINA, District Judge.

DENYING THE PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; REMANDING IN PART TO THE DEFENDANT FOR ADDITIONAL INFORMATION

## I. INTRODUCTION

This Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, case comes before the court on the Federal Bureau of Investigation's ("FBI" or "the defendant") motion for summary judgment and the plaintiff's cross-motion for summary judgment. The plaintiff, Donald Raulerson, Sr., argues that the FBI impermissibly withheld, and must now release, information that the plaintiff sought through a FOIA request. The defendant maintains that it validly withheld the contested information pursuant to numerous FOIA exemptions. Except to the extent that the defendant relied on implied confidentiality to withhold or excise information, the defendant met its burden under the FOIA and the court grants the defendant's motion accordingly. For all information that the defendant withheld under a theory of implied confidentiality, the court denies the defendant's motion and remands the matter to the defendant for better evidence that implied confidentiality in fact existed. Finally, because the plaintiff has not met the standard for a motion for summary judgment, the court denies the plaintiff's cross-motion.

## II. BACKGROUND [2]

### A. Factual Background

On March 6, 1995, the plaintiff submitted a FOIA request to the FBI Miami Field Office ("MFO") and FBI Headquarters ("FBIHQ").[3] *See* Def.'s Mot. for Summ. J. at 1. On April 28, 1995, the MFO notified the plaintiff that the FBIHQ would handle his entire request. *See id.* at 1–2. Nearly four years later, on April 7, 1999, the FBI provided the plaintiff with a list of the files located in response to his

---

**2.** The plaintiff has stipulated to the defendant's account of the procedural background of this case. *See* Pl.'s Opp'n at 1. Therefore, the court derives its background information from the defendant's motion for summary judgment.

**3.** The plaintiff requested information concerning systems, computers, data banks, files, documents, agents, notes, dossiers, tapes and other recordings, transcripts, reports, statements, notes, memos and any other informative materials or data that may be available, including all investigative records compiled for law-enforcement purposes not exempt as per amendments in force at this time. *See* Def.'s Mot. for Summ. J. Ex. A (the plaintiff's original FOIA request).

requests. *See id.* at 2. The list indicated that the government had located more than 69,000 pages of responsive documents. *See id.* at 4; Def.'s Mot. for Summ. J. Ex. C[4] (letter to the plaintiff from John M. Kelso, Chief, Freedom of Information—Privacy Acts ("FOI–PA") Section Office of Public and Congressional Affairs, dated April 7, 1999) (describing the vast number of documents found in response to the plaintiff's request and offering to accelerate the plaintiff's request if he agreed to limit its scope).

After negotiations, the plaintiff agreed to reduce the scope of his request.[5] On February 29, 2000, FBIHQ forwarded the plaintiff 563 pages of materials (for the most part concerning the plaintiff's attempt to kill a federal officer, racketeering, obstructing justice, and defrauding a financial institution charges). *See* Def.'s Mot. for Summ. J. at 2, 4, Ex. D. Nonetheless, the FBI did not forward the plaintiff all the information that he had expected. Instead, it withheld certain information (mostly by means of excision, but the FBI denied in full 78 pages)[6] pursuant to various FOIA exemptions. *See* Ex. D at 13. The FBI also informed the plaintiff that some documents he had requested originated with the Drug Enforcement Administration ("DEA") and Bureau of Prisons ("BOP"), and that those agencies would respond to the plaintiff directly. *See* Def.'s Mot. for Summ. J. at 3. Finally, the FBI denied in full 13 pages of information concerning certain audiotapes. *See id.*

## B. Procedural History

The plaintiff filed his initial complaint with this court on November 3, 1995. On March 31, 1998, this court granted the motions for summary judgment filed by federal defendants Department of Justice, Criminal Division; Executive Office of the U.S. Attorneys; Customs Service; and Drug Enforcement Agency. *See* Mem. Op. dated March 31, 1998. On June 22, 2001, after numerous extensions of time, status reports, and motions for interlocutory appeal, the only remaining defendant, the FBI, filed the motion for summary judgment currently under consideration. Nearly five months later, after an extension of time, the plaintiff responded and filed a cross-motion for summary judgment.

## III. ANALYSIS

### A. Legal Standard for Summary Judgment in a FOIA–Review Case

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C.Cir.1995). To determine which facts are "material," a court must look to the

---

4. For convenience, and because this opinion only references exhibits from the defendant's motion for summary judgment, all future cites to exhibits will simply refer to the exhibit letter.

5. The plaintiff agreed to limit the scope of his request primarily to information gathered between 1989 and 1999, expressed particular interest in "receiving all audio tapes, video tapes, telephone conversation recording/tran-

scripts and discovery material," and stated that he was not interested in pen register information. *See* Ex. C. The plaintiff's revised request reduced the scope of his original request by 66,788 pages. *See id.*

6. In reference to the 78 pages denied in full, the defendant states that "many of the previously denied pages are now being released in part in Exhibit G" which is attached to Mr. Hodes' third declaration. Ex. D at 13 n. 7.

substantive law on which each claim rests. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *See Celotex*, 477 U.S. at 322, 106 S.Ct. 2548; *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *See Anderson*, 477 U.S. at 255, 106 S.Ct. 2505.

■ In a judicial review of an agency's response to a FOIA request, the defendant agency has the burden of justifying nondisclosure, and the court reviews *de novo* the agency's action. *See* 5 U.S.C. § 552(a)(4)(B); *Al–Fayed v. CIA*, 254 F.3d 300, 305 (D.C.Cir.2001). The court may grant summary judgment to an agency on the basis of its affidavits if they (a) "describe the documents and the justifications for nondisclosure with reasonably specific detail," (b) "demonstrate that the information withheld logically falls within the claimed exemption," and (c) "are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C.Cir.1981). While an agency's affidavits are presumed to be in good faith, a plaintiff can rebut this presumption with evidence of bad faith. *See Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C.Cir.1981). But such evidence cannot be comprised of "purely speculative claims about the existence and discoverability of other documents." *Id.*

### B. The Defendant's Search for Documents is Adequate

■ An agency must respond to FOIA requests by conducting a search reason-ably calculated to uncover all relevant documents. *See Steinberg v. DOJ*, 23 F.3d 548, 551 (D.C.Cir.1994). The agency need not search every record system or conduct a "perfect," "epic," "hopeless," or "wasteful" search. *See, e.g., Meeropol v. Meese*, 790 F.2d 942, 952, 956 (D.C.Cir.1986); *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C.Cir.1991). Instead, the search must be reasonable, pursued in good faith, and conducted with methods likely to produce the requested information, if it exists. *See, e.g., Campbell v. DOJ*, 164 F.3d 20, 27 (D.C.Cir.1998).

■ The plaintiff alleges in general terms that the FBI's method of searching the criminal division indices was not reasonably calculated to uncover all relevant documents. *See* Pl.'s Opp'n at 5; Pl.'s Mot. for Summ. J. at 3–6. Affording all appropriate deference to this pro se plaintiff, the court finds no evidence that the FBI conducted an inadequate search. In response to the plaintiff's FOIA request, FBIHQ and the MFO accessed the FBI's central record system ("CRS"). The CRS consists of "administrative, applicant, criminal, personnel, and other files compiled for law enforcement purposes." Ex. D at 4. In addition to the CRS records at FBIHQ, FBI field offices such as the MFO maintain certain relevant CRS files on site. *See id.* The FBI searched its records through "General Indices," which are "arranged in alphabetical order, and consist of an index on various subjects, including the names of individuals and organizations." *Id.* Through its searches of the indices, the MFO located roughly 68,700 pages of responsive documents on site, and the FBIHQ located roughly 800 pages. *See id.* at 8–9.

This Circuit has held that, "[w]hen a request does not specify the locations in which an agency should search, the agency has discretion to confine its inquiry to a

central filing system if additional searches are unlikely to produce any marginal return ...." *Campbell*, 164 F.3d at 28. In other words, if the FBI believes that a search of its CRS is sufficient, it need not go further. However, if it discovers that relevant information might exist in another set of files or a separate record system, the agency must look at those sources as well. *See id.* at 28. Here, the plaintiff has not demonstrated that the FBI should have proceeded any differently than it did. The FBI located documents at the MFO relevant to the plaintiff's request, and the plaintiff did not request that the FBI consult additional records systems. Accordingly, the court determines that the FBI's search was adequate.

## C. The Defendant's *Vaughn* Indices Generally Provide Reasonably Specific Detail

While there is no categorical formula for how an agency should articulate its justifications for nondisclosure, this Circuit, through what has become known as a "*Vaughn* index," has established a general standard for what information the agency's affidavits should contain. *See Vaughn v. Rosen*, 484 F.2d 820, 826–27 (D.C.Cir.1973) (requiring affidavits that specifically describe the withheld or redacted documents and justify, in detail, why each withheld record that would be responsive to the request is exempt from disclosure under the FOIA); *Spirko v. United States Postal Serv.*, 147 F.3d 992, 998 n. 4 (D.C.Cir.1998) (stating that the "form of the *Vaughn* index is unimportant and affidavits providing similar information can suffice"); *Hayden v. Nat'l Sec. Agency*, 608 F.2d 1381, 1387 (D.C.Cir.1979) (observing that "... the affidavits must show, with reasonable specificity, why the documents fall within the exemption" and that the affidavits many not present conclusory, sweeping, or vague claims) (footnote omitted).

The plaintiff claims that the defendant failed to provide a proper *Vaughn* index. *See* Pl.'s Opp'n at 2–3; Pl.'s Mot. for Summ. J. at 8–9. The defendant responds that its index is adequate and consists of "one declaration by Nancy Steward, Paralegal Specialist, FBIHQ and three declarations by Scott A. Hodes, Acting Chief, Litigation Unit, [FOI–PA] Section, Office of Congressional Affairs, FBIHQ." Def.'s Mot. for Summ. J. at 6 (referring to the exhibits to the motion).

■ As stated previously, there is no set formula for a *Vaughn* index; rather, the court expects a certain amount of detail if it is to grant a motion for summary judgment on the affidavits rather than conduct an *in camera* review or request elaboration from the withholding agency. In its March 15, 2001 status report, the defendant indicated to this court that it would need "at least 60 days to compile a proper *Vaughn* index." *See* Status Report dated March 15, 2001 at 2. The exhibits to the defendant's motion for summary judgment now constitute the defendant's *Vaughn* index, and the third declaration of Scott A. Hodes (Ex. D) is the bulk of the index. This manner of presenting the *Vaughn* index is acceptable. *See Afshar v. Department of State*, 702 F.2d 1125, 1144–45 (D.C.Cir.1983).

The defendant's index uses a "coded format" that refers to certain *categories* of withheld information and the reasons for withholding such information. *See* Ex. D. The index contains a table of "justification categories" that matches a specific FOIA exemption with the type of information the exemption allows an agency to withhold. *See id.* A discussion of the reasons for invoking a particular exemption and the policies behind the exemption follows the table. *See id.* at 13 ("Explanation of Format Utilized for the Justification of Deleted Material"). The court notes that, while

the coded format does not always explain in specific language why a particular piece of information was withheld, certain types of withheld information do not require detailed and case-by-case analysis. For example, the FBI may not have to provide the court with a detailed analysis of *each* deletion of an agent's name from disclosed documents. A more general argument—namely that such information was withheld for privacy considerations—may in fact be sufficient. *See Davis v. DOJ*, 968 F.2d 1276, 1282 n. 4 (D.C.Cir.1992) (holding that precise matching of exemptions with specific withheld items may be unnecessary).

Ultimately, however, the broad contours of the *Vaughn* index on their own do not determine the outcome of the motions at bar. The court, thus, turns to the specific exemptions cited by the defendant and, to the extent the plaintiff makes them, to arguments against the FBI's application of the exemptions, to determine if the defendant has met its burden for withholding information.

## D. The Defendant Applies FOIA Exemptions to Justify Withholding Information

The FBI applies Exemptions 2, 3, 7(C), 7(D), and 7(F) to justify withholding certain information from the the plaintiff. The plaintiff, however, in his cross-motion for summary judgment, provides a boilerplate argument that provides general reasons regarding deficiencies in the defendant's *Vaughn* index but specifically addresses only Exemption 6, which is not relevant to this case. *See* Pl.'s Mot. for Summ. J. In his opposition to the defendant's motion for summary judgment, the plaintiff does counter the defendant's application of Exemptions 2, 3, 7(C), 7(D), and 7(F). *See* Pl.'s Opp'n at 5–9. The court now addresses each exemption that the defendant applies.

## 1. The Defendant Properly Applies Exemption 2 to Withhold Information

■ Exemption 2 prevents from disclosure matters that are "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. 552(b)(2). This Circuit has interpreted "solely" to mean "predominantly." *See Crooker v. ATF*, 670 F.2d 1051, 1056–57 (D.C.Cir.1981). If the agency demonstrates predominant internality, the information can be withheld if the agency proves either that "disclosure may risk circumvention of agency regulation" (the "high 2" or "circumvention exemption") or that "the material relates to trivial administrative matters of no genuine public interest" (the "low 2" exemption). *Schwaner v. Dep't of Air Force*, 898 F.2d 793, 794 (D.C.Cir.1990); *see also Cox v. DOJ*, 601 F.2d 1, 5 (D.C.Cir.1979) (defining "internal").

In this case, the FBI applied the high–2 or circumvention exemption to delete "permanent symbol source numbers from records responsive to [the] plaintiff's [FOI-PA] request." *See* Def.'s Mot. for Summ. J. at 12. The FBI's *Vaughn* index states that these symbols "are assigned to confidential informants who report information to the FBI on a regular basis pursuant to an 'express' grant of confidentiality." Ex. D at 17. The index further states that such information, if released, "would indicate both the scope and location of FBI informant coverage within a particular geographic area," "reveal connections of the confidential information to dates, times, places, events and names from which the identity of the confidential informant could be determined," and ultimately lead to the possibility that, through a process of elimination, the informant could be identified and the FBI's informant program compromised, *see id.* at 17–19.

The court notes that the FBI has made a broad argument concerning a category of withheld information (i.e., symbol source numbers) rather than specific arguments concerning each instance of excision. As indicated earlier, however, the withholding of certain types of information is amenable to non-specific explanation. *See Davis,* 968 F.2d at 1282 n. 4. Permanent symbol source numbers are an example of such information, for these numbers are predominantly internal and, if disclosed, would risk circumvention of the FBI's informant program. Accordingly, the court holds that the FBI properly applied Exemption 2 to the above-described information. *See Lesar v. DOJ,* 636 F.2d 472, 485–86 (D.C.Cir.1980) (recognizing that symbol source numbers "bear no relation to the substantive contents of the records," are only valuable because they "control the internal and external dissemination of the actual identities of FBI informants," are of no legitimate public interest, and, if released, "could lead to the exposure of confidential sources referred to in criminal investigative files . . .").

### 2. The Defendant Properly Applies Exemption 3 to Withhold Information

■ Exemption 3 prevents from disclosure certain matters that are "specifically exempted from disclosure by statute . . . ." 5 U.S.C. § 552(b)(3). The defendant relies on this Exemption and Federal Rule of Criminal Procedure 6(e)(2)[7] to withhold from the plaintiff the "names of individuals who were subpoenaed to testify before the Federal Grand Jury as well as their employers." Def.'s Mot. for Summ. J. at 16. Because courts have long held that Rule 6(e)(2) satisfies the statute requirement of Exemption 3, *see, e.g., Fund for Constitutional Gov't v. Nat'l Archives & Records*

*Serv.,* 656 F.2d 856, 867 (D.C.Cir.1981), this court's "only remaining inquiry is whether information withheld on that basis is actually included within the reach of [Rule 6(e) ]." *See id.* at 868.

Rule 6(e) contains several exceptions to the general requirement of secrecy in the grand jury. *See* FED. R. CRIM. P. 6(e). Some of these exceptions are inapplicable to the present case because they deal with disclosure to government officials. Thus, the only exception relevant to the defendant is 6(e)(3)(C)(i)(I), explaining that disclosure may be made "when so directed by a court preliminarily to or in connection with a judicial proceeding." *See* FED. R. CRIM. P. 6(e)(3)(C)(i)(I). Yet this exception also does not apply: as this Circuit has held, this exception "contemplates disclosure in the course of *parallel* civil proceedings and 'does not include the very proceeding instituted for the purpose of obtaining disclosure.'" *Fund for Constitutional Gov't,* 656 F.2d at 868 (emphasis added) (citing *Hiss v. DOJ,* 441 F.Supp. 69, 70 (S.D.N.Y.1977)). Because no exceptions to the grand jury secrecy requirement apply to the plaintiff's request, the FBI need only show that the information it withheld concerns matters "occurring before the grand jury, other than its deliberations and the vote of any grand juror." *See* FED. R. CRIM. P. 6(e)(3)(A). The names of individuals subpoenaed to testify before the grand jury and the names of their employers clearly are matters "occurring before the grand jury." *Cf. Fund for Constitutional Gov't,* 656 F.2d at 856, 869 (information that would reveal the identity of grand jury members cannot be disclosed). Accordingly, the court concludes that the FBI properly applied Exemption 3 with regard to Rule 6(e).

---

7. Rule 6(e)(2) states that "an attorney for the government, or any person to whom disclosure is made under paragraph (3)(A)(ii) of this subdivision shall not disclose matters occurring before the grand jury, except as otherwise provided for in these rules."

■ The defendant also withheld information pursuant to Title III of the Omnibus Crime Control Act of 1968 ("Title III"), 18 U.S.C. § 2511 *et seq.* Specifically, the FBI withheld "intercepted telephone numbers, names and addresses of targeted individuals, time frame dates of the interception and information derived from the Title III intercept which was further utilized in the investigation." Def.'s Mot. for Summ. J. at 17.

Title III satisfies the statute requirement of Exemption 3. *See, Lam Lek Chong v. DEA,* 929 F.2d 729, 733 (D.C.Cir.1991). Title III's limited disclosure provisions authorize the release of intercepted information only in a few circumstances. *See id.* at 732. For example, a judge may, at her discretion, release the intercepted information to the parties under surveillance. *See* 18 U.S.C. § 2518(8)(d), (10)(a). Otherwise, Section 2517 limits disclosure to three narrow areas, none of which the plaintiff satisfies. In the present case, then, because the plaintiff has not satisfied any of Title III's disclosure exceptions, the court determines that the FBI validly applied Exemption 3 with regard to Title III's general prohibition on the release of intercepted information.

### 3. The Defendant Applies Exemption 7 to Withhold Information

■ Exemption 7 generally applies to "records or information compiled for law enforcement purposes ...." 5 U.S.C. § 552(b)(7). In addition, this exemption requires that the withholding agency establish one of six enumerated harms. *See id.* Here the defendant relies on three of the enumerated harms: invasion of personal privacy, Exemption 7(C); confidential source identity, Exemption 7(D); and life or physical safety, Exemption 7(F). The parties do not dispute that the requested information meets the threshold requirement of being "compiled for law enforcement purposes." Accordingly, the court focuses on the three harms that the defendant asserts.

### i. The Defendant Properly Applies Exemption 7(C) to Withhold Information

This exemption covers any disclosure that "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). It "recognizes the stigma potentially associated with law enforcement investigations and affords broader privacy rights to suspects, witnesses, and investigators." *Bast v. DOJ,* 665 F.2d 1251, 1254 (D.C.Cir.1981). Exemption 7(C) requires the withholding agency to balance privacy interests against the public's interest in learning about the operations of its government. *See id.; see also Keys v. DOJ,* 830 F.2d 337, 346 (D.C.Cir.1987) (the government need not prove that the release will definitely lead to an unwarranted invasion of personal privacy; rather, "[i]t need only demonstrate a *'reasonable'* expectation of such an invasion") (emphasis added).

■ This Circuit has adopted a categorical approach for "investigatory files [that] would reveal the identities of individuals who are subjects, witnesses, or informants in law enforcement investigations." *Nation Magazine, Washington Bureau v. United States Customs Serv.,* 71 F.3d 885, 896 (D.C.Cir.1995). Under this approach, "unless access to the names and addresses of private individuals appearing in files within the ambit of Exemption 7(C) is necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity, such information is exempt from disclosure." *SafeCard Services, Inc. v. SEC,* 926 F.2d 1197, 1206 (D.C.Cir.1991) (holding that, because there was no evidence of agency misconduct, "the agency need not disclose the names

and addresses redacted from the documents at issue").

The defendant invoked Exemption 7(C) to protect the following six categories of information:

(1) names and/or identifying information pertaining to FBI Special Agents and support personnel; (2) names and identifying information relating to third parties who provide information to the FBI; (3) names and identifying information relating to third parties mentioned in FBI files; (4) names and identifying information relating to state and local law enforcement officer(s); (5) names and identifying data relating to non-FBI federal government employees; and (6) names and/or identifying information concerning third parties of investigative interest.

Def.'s Mot. for Summ. J. at 19. The defendant's second, third, and sixth categories are clearly protected under this Circuit's categorical approach to the privacy interests of private individuals. With regard to the defendant's first, fourth, and fifth categories, federal and state law enforcement officers and non-FBI federal government employees have an undeniable interest in maintaining their privacy, although whether they qualify for the categorical approach is unclear. *See, e.g., Fitzgibbon v. CIA*, 911 F.2d 755, 767 (D.C.Cir. 1990) (exemption 7(C) is particularly concerned with the strong interest of *all* individuals in not being unwarrantedly associated with alleged criminal activity); *Nix v. United States*, 572 F.2d 998, 1006 (4th Cir.1978) (public servants should not be stripped of personal privacy, even with respect to the discharge of their official duties) (cited with approval in *Lesar*, 636 F.2d at 487 n. 88).

In this case, the court determines that the privacy interests of the individuals names in the documents substantially outweigh any interest the public might have in making their names public. There is no allegation that these individuals acted improperly or withheld information concerning events of extraordinary public interest. *Cf. Campbell v. DOJ*, 164 F.3d.20, 33 (D.C.Cir.1998) (discussing the "obvious historical values of documents describing the FBI's role in the cold war and in the civil rights movement"). Accordingly, the court upholds all of the defendant's withholdings under Exemption 7(C).

### ii. The Defendant Applies Exemption 7(D) to Withhold Information, in Part Properly and in Part with Insufficient Information

The "paramount objective of Exemption 7(D) . . . is to keep open the Government's channels of confidential information." *Birch v. United States Postal Serv.*, 803 F.2d 1206, 1212 (D.C.Cir.1986). The portions of Exemption 7(D) that are relevant to this case protect law-enforcement information that (1) could reasonably be expected to disclose the identity of a confidential source, including a State or local agency, and, (2) in the case of a criminal investigation, information furnished by a confidential source. *See* 5 U.S.C. § 552(b)(7)(D). Exemption 7(D) protects not only information that would directly reveal the identity of an informant, but also information that might reveal such identity indirectly. Furthermore, the second part of 7(D) broadly protects certain information regardless of its identity-revealing qualities. Finally, the Supreme Court has held that in the absence of express grants of confidentiality, courts can infer confidentiality when the character of the crime at issue and the source's relation to the crime are such that the source would not have given information to the agency without believing that the agency would keep the information confidential. *See DOJ v. Landano*, 508 U.S. 165, 181, 113 S.Ct. 2014, 124 L.Ed.2d 84 (1993).

The FBI has invoked Exemption 7(D) for four categories of information: (1) information relating to symbol source numbers; (2) names and identifying data and information provided by individuals interviewed under an express grant of confidentiality, "but only to the extent that the information would reveal the identity of the informant"; (3) names and identifying data and information provided by individuals interviewed under an implied grant of confidentiality; and (4) the identity of and information furnished by state and local law enforcement authority. *See* Def.'s Mot. for Summ. J. at 27, 28.

### a. The Defendant's First and Second Categories: Symbol Source Numbers And Names and Identifying Data

The court has already held that the FBI properly withheld the entire first category, symbol source numbers, under Exemption 2. With regard to the second category, the defendant only seeks to withhold identity-revealing information. Thus, the court need not determine whether express confidentiality exists to protect such information, for it is already protected under 7(C), to which the court's prior analysis (and the categorical approach discussed therein) applies. *See Lesar,* 636 F.2d at 488 ("references to FBI informants properly could be deleted under subsection 7(C) to minimize the public exposure or possible harassment of these individuals as well.").

### b. The Defendant's Third Category: Information Provided By Individuals Interviewed Under an *Implied Grant of Confidentiality*

■ As to the third category, the defendant argues that an implied grant of confidentiality exists for "individuals who provided information about plaintiff and/or his criminal activities" because these individuals had a "specific relationship with the plaintiff," the plaintiff was being investigated for "drug trafficking, money laundering and a plot to murder a federal

employee," and "[s]ome individuals indicated to law enforcement personnel that they feared reprisal from the plaintiff." Ex. D at 31–32. The defendant leaves the court in the dark by failing to explain what it means by a "specific relationship." *See id.*

■ While pointing to the general legal standards for assessing implied confidentiality, these boilerplate reasons lack the specificity necessary for this court to make an adequate determination of whether implied confidentiality actually exists. *See id.; Landano,* 508 U.S. at 179, 181, 113 S.Ct. 2014. For example, the "specific relationship" that the defendant argues exists between the informants and the plaintiff could exist simply by virtue of the informants' status as informants. Whether the plaintiff's crimes rise to the level of violence contemplated in *Landano* that would trigger an inference of confidentiality is unclear. *See id.; Delviscovo v. FBI,* 903 F.Supp. 1, 3 (D.D.C.1995) ("A major racketeering investigation focusing on groups and individuals involved in extortion, gambling, loan sharking, narcotics trafficking and interstate transportation of stolen property gives rise to ... an inference [of confidentiality] without the need for elaboration."). Testifying about almost any crime can cause anxiety. The dispositive issue must therefore be more than simply whether the crime is violent, such as whether "there are *discrete aspects of the crime* that make it *particularly likely* that a source reasonably would fear reprisal." *Hale v. DOJ,* 99 F.3d 1025, 1031 (10th Cir.1996) (emphases added). The court currently has insufficient evidence to indulge in such an inference. Finally, the fact that "some" individuals were concerned about reprisal does not indicate that the court should grant a blanket assumption of implied confidentiality to the entire group of informants, some of whom may not have felt this concern. Because

of the potentially sensitive nature of such information, however, rather than ordering disclosure, the court remands this issue of implied confidentiality to the FBI for elaboration in light of the above guidelines.[8] *See Campbell,* 164 F.3d at 31 (preferring that a district court require new declarations when agency affidavits are facially inadequate).

### c. The Defendant's Fourth Category: Information Provided By Law Enforcement Pursuant to an *Implied Grant of Confidentiality*

■■■ In the remaining category of information, the fourth category, the defendant argues that state and local agencies furnished to the FBI with an implied assurance of confidentiality. *See* Def.'s Mot. for Summ. J. at 30. The FBI argues for implied confidentiality because

> [t]he FBI, in connection with a wide variety of criminal investigations, regularly solicits and receives information from state and local agencies or bureaus. Inherent in this cooperative effort is the mutual understanding that the identities of such sources and/or the information provided by them will be held in confidence .... This mutual understanding of confidential treatment has been and continues to be the foundation upon which the exchange of information between the FBI and state and local agencies is based.

Ex. D at 32–3. While the court agrees with the general proposition that federal, state, and local law enforcement agencies should communicate, the FBI has failed to provide information *specific to this case* to establish implied confidentiality. Instead, the FBI once again speaks in boilerplate terms: "mutual understandings," "cooperative efforts," and the "foundation upon which the exchange of information between the FBI and state and local agencies is based." *Id.* To mention some examples of evidence that the FBI has failed to provide, the defendant has not informed the court whether the documents furnished to the FBI are available to the general public, *see Putnam v. DOJ,* 873 F.Supp. 705, 717 (D.D.C.1995), or whether any of the documents provided to the FBI stated, "not to be distributed outside your agency," as in *Cucci v. DEA,* 871 F.Supp. 508, 513 (D.D.C.1994).

Were the court to find implied confidentiality with the dearth of evidence currently before it, the court would be approaching precisely the situation that *Landano* forbids: finding a "presumption that a source is confidential within the meaning of Exemption 7(D) whenever the source provides information to the FBI in the course of a criminal investigation." 508 U.S. at 181, 113 S.Ct. 2014. Accordingly, the court remands this matter to the defendant for elaboration.

### iii. The Court Need Not Conduct an Exemption 7(F) Analysis

Exemption 7(F) allows agencies to withhold certain information that "could reasonably be expected to endanger the life or physical safety of any individual." 5 U.S.C. § 552(b)(7)(F). The defendant invokes this exemption for three categories of information: (1) names, signatures, and identifying information concerning FBI agents and support personnel who investigated the plaintiff; (2) the names and

---

**8.** As indicated *supra,* to the extent the FBI has sought to protect names and identifying information through Exemption 7(D), such information is already protected under Exemption 7(C). Of course, Exemption 7(C) does not necessarily protect non-identifying information that informants provide to the FBI.

Hence, the need for the defendant to prove to the court that the information that the FBI withheld in its entirety under the second prong of Exemption 7(D) (in the case of a criminal investigation, information furnished by a confidential source) was provided *confidentially.*

identifying information of state and local law enforcement personnel and non-FBI federal employees; and (3) the names and identifying information of private citizens who provided information to the FBI concerning the plaintiff. *See* Def.'s Mot. for Summ. J. at 32.

Unlike Exemption 7(C), which involves a balancing of societal and individual privacy interests, 7(F) is an absolute ban against certain information and, arguably, an even broader protection than 7(C). *Cf. Jimenez v. FBI*, 938 F.Supp. 21, 30 (D.D.C.1996) (recognizing that Exemption 7(F) affords broad protection to the identities of individuals mentioned in law enforcement files). The court need not conduct an Exemption 7(F) analysis, however, for as the defendant points out, the information that the defendant seeks to protect under 7(F) is virtually identical to the information that the defendant has (successfully) sought to protect under exemption 7(C). *See* Def.'s Mot. for Summ. J. at 31. Thus, with regard to the three categories of information above, the court holds that the defendant properly withheld this information under 7(C).

### E.  The Defendant Has Disclosed Reasonably Segregable Information

The FOIA requires that, after proper application of the act's exemptions, "any reasonably segregable" information be disclosed. *See* 5 U.S.C. § 552(b) (sentence immediately following exemptions); *Armstrong v. Exec. Office of the President*, 97 F.3d 575, 578–79 (D.C.Cir.1996) (stating that an affidavit must show with "reasonable specificity" why a withheld document could not be further segregated). The FBI has withheld numerous documents in their entirety, and the court now attempts to determine whether those documents had segregable material that should have

been disclosed pursuant to 5 U.S.C. § 552(b).

Many of the documents that the FBI has withheld are not responsive to the plaintiff's request and concern irrelevant third parties. *See, e.g.,* Ex. G, FBI pages 3–6, 13–14, 34, 42–45, 47, 55–65, 67–71, 73–75, 76–78, 79–80, 81–82, 83–86, 95–97, 111–114, 115, 122–23, 127, 153–55, 160–64, 183–84, 195–203, 228, 230, 287, 317, 323, 330, 346, 347–49, 352, 363, 433–442, 456–459, 460–80, 498–507, 628–29, 737–40.[9] The court determines that, because these documents are outside the scope of (and irrelevant to) the plaintiff's FOIA request, the FBI has no obligation to disclose any portions of these documents and may withhold them in their entirety.

At this juncture, the court cannot rule on the other documents that the FBI has withheld because the FBI has justified withholding those documents by stating that they were furnished to the FBI or other agencies with implied confidentiality. *See* Ex. G, FBI pages 340–43, 362, 520–29, 531–44. Such confidentiality would indeed allow the FBI to withhold these documents, but, as stated above, the court is not convinced that such confidentiality exists. The court therefore denies without prejudice the defendant's motion for summary judgment with regard to the documents listed in this paragraph until it receives new affidavits or arguments from the FBI concerning implied confidentiality.

## IV.  CONCLUSION

For the foregoing reasons, the court grants the defendant's motion for summary judgment to the extent it relies on arguments *other than* Exemption 7(D)'s implied confidentiality exception. As to implied confidentiality, the court concludes that the defendant fails to meet its eviden-

---

9. These pages are contained in Ex. G and briefly describe the withheld information.

tiary burden and must provide the court with further evidence of implied confidentiality. *See supra* III.D.3.ii.b, III.D.3.ii.c. Thus, the court denies *without prejudice* the *portion* of the defendant's motion for summary judgment *that relies exclusively on Exemption 7(D)'s implied confidentiality exception* to justify withholding information from the plaintiff. Because whether implied confidentiality actually exists is unclear, and because the plaintiff fails to prevail on all other issues, the court denies the plaintiff's motion for summary judgment. However, once the defendant provides further information and argument, the plaintiff can respond to the supplemental submission. To this extent *only,* the court denies *without prejudice* the plaintiff's motion for summary judgment.

An order directing the parties in a manner consistent with this Memorandum Opinion is separately and contemporaneously issued this 29th day of March, 2002.

### *ORDER*

DENYING THE PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; REMANDING IN PART TO THE DEFENDANT FOR ADDITIONAL INFORMATION

For the reasons stated in this court's Memorandum Opinion separately and contemporaneously issued this 29th day of March, 2002, it is

**ORDERED** that the plaintiff's motion for summary judgment is **DENIED**[10]; and it is

**FURTHER ORDERED** that the defendant's motion for summary judgment is **GRANTED** in part; and it is

**ORDERED** that, to the extent the defendant relies exclusively on Exemption 7(D)'s implied confidentiality exception, the

defendant's motion for summary judgment is **DENIED in part without prejudice,** and this matter is **REMANDED** to the defendant for further evidence of implied confidentiality; and it is

**FURTHER ORDERED** that the defendant file a supplemental *Vaughn* index and motion for summary judgment no later than May 10, 2002 and the plaintiff file a response no later than June 3, 2002. THE COURT IS NOT INCLINED TO GRANT ANY EXTENSIONS OF TIME.

**SO ORDERED.**

---

**10.** The conclusion of the court's memorandum opinion should be consulted for a statement as to which parts of the plaintiff's motion are denied *without* prejudice.